

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **DAVID LUBOFSKY** and **CRISTINE SIMBAHAN,**<br><br>Plaintiffs,<br><br>vs.<br><br>**SHISHIN MIYAGI, ETHAN SNIDER,** and **SEVENTH-DAY ADVENTIST CLINIC** and **JOHN DOE INSURANCE COMPANY,**<br><br>Defendants, | **CIVIL CASE NO. CV0558-19**<br><br><br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter comes before the Honorable Arthur R. Barcinas upon the Defendants' Motion for Stay Pending Arbitration filed May 28, 2019, and the Plaintiffs' Motion for Declaratory Judgment and Permanent Injunction filed December 2, 2019. Plaintiffs David Lubofsky and Christine Simbahan (collectively, "the Plaintiffs") are represented by Attorney Robert L. Keogh. Defendants Shishin Miyagi, Ethan Snider, and Seventh-Day Adventist Clinic (collectively, "the Defendants") are represented by Attorney Mitchell F. Thompson. Having reviewed the pleadings, legal authorities, and the parties' arguments in this matter, the Court issues the following Decision and Order.

## BACKGROUND

This matter arises from a medical malpractice claim. On May 8, 2019, Plaintiffs filed their Complaint, alleging the wrongful death of their five-year old son as a result of the

Defendant's negligence while receiving medical treatment at Seventh-Day Adventist Clinic ("the Clinic"). The Plaintiffs, consequently, seek damages and injunctive relief based on professional negligence and medical malpractice on the part of the Defendants. Additionally, the Plaintiffs, in their Complaint, seek to challenge the constitutionality and "organicity" of the Medical Mandatory Arbitration Act ("MMMAA"). *See* 10 GCA § 10101, *et seq.*

On May 28, 2019, the Defendants filed a Motion to Stay, requesting that the Court stay this action pending arbitration of the Plaintiffs' claims pursuant to the MMMAA. Specifically, the Defendants argue that the Plaintiffs' claims based on alleged malpractice are subject to mandatory arbitration and must be stayed. The Plaintiffs filed their Opposition on June 21, 2019. The Plaintiffs, on the other hand, assert *inter alia* that instead, it is the mandatory arbitration that should be stayed pending the resolution of their constitutional challenges to the MMMAA. The Defendants, in their Motion and in their Reply filed July 8, 2018, argue that Plaintiffs' constitutional challenges to the MMMAA are meritless and premature.

On October 21, 2019, the Court issued an Order scheduling a motion hearing on the Plaintiffs' constitutional challenges to the MMMAA. In response to the Court's Order and in preparation of the motion hearing, the Plaintiffs filed a Motion for Declaratory Judgment and Permanent Injunction on December 2, 2019. In their motion, the Plaintiffs argue that the MMMAA's imposition of costly, forced, and unconsented arbitration as a precondition to their access to the courts runs afoul of certain fundamental rights guaranteed by the United States Constitution and the Organic Act of Guam. Specifically, the Plaintiffs assert that the MMMAA violates their fundamental rights of access to the courts, due process, and equal protection. The Defendants, on the other hand, filed their Opposition to the Plaintiffs' Motion for Declaratory Judgment on February 3, 2020. In their Opposition, the Defendants contend, *inter alia*, that the Plaintiffs lack standing to challenge the constitutionality of the MMMAA, and that the MMMAA is not unconstitutional. The Plaintiffs filed their Reply to the Defendants' Opposition on March 4, 2020. In short, the Plaintiffs request that the Court declare the MMMAA unconstitutional for violating their fundamental rights of access to the courts, and that the Court

issue a permanent injunction prohibiting the imposition of the mandatory arbitration of their medical malpractice claim against the Defendants for the wrongful death of their son.

On March 10, 2020, the Court heard arguments on both the Defendants' Motion to Stay and the Plaintiffs' subsequent Motion for Declaratory Judgment. At the conclusion of the hearing, the Court took both matters under advisement.

## DISCUSSION

As a preliminary matter, the Court acknowledges that the Plaintiffs' medical malpractice claims fall under the MMMAA. The MMMAA defines "malpractice" as "any tort or breach of contract based on health care or professional services rendered or which should have been rendered by a health professional or health care institution to a patient." 10 GCA § 10101(d). The first three causes of action in the Plaintiffs' Complaint – wrongful death, negligent infliction of emotional distress, and insurer's liability – are based on alleged breaches of duty by the Clinic and its healthcare providers. *See* Compl., ¶¶ 26-27, 35-36, 38, 40-41. Thus, because the Plaintiffs' first three causes of action pertain to medical malpractice, those causes of action are subject to the MMMAA.

Under the MMMAA, a claimant asserting a medical malpractice claim must first submit that claim to arbitration. *See* 10 GCA § 10102. The statute provides in relevant part:

> Any claim that accrues or is being pursued in the territory of Guam, whether in tort, contract, or otherwise, ***shall be submitted to mandatory arbitration*** . . . if it is a controversy between the patient, . . . and the health professional or health care institution . . . and is based on malpractice, tort, . . . or any other alleged violation of a legal duty incident to the acts of the health professional or health care institution, or incident to services rendered . . . by health processional or health care institution.

*Id.* (emphasis added). Further, the MMMAA provides that a "party aggrieved by the alleged failure . . . to arbitrate . . . may petition the Superior Court of Guam, for an order directing that such arbitration proceed in the manner provided for in [the MMMAA]." 10 GCA § 10115 (alterations in the original). Once arbitration is completed and an award is issued, the Superior Court may confirm, vacate, or modify that award, as well as hold a trial *de novo* on the arbitrated claims upon a Notice of Appeal filed by either party. *See* 10 GCA §§ 10135-10139. In

other words, under the MMMAA, medical malpractice claimants are required to first submit their claims to arbitration prior to bringing a court action. *See* 10 GCA § 10102; *see also Villagomez-Palisson v. Super. Ct.*, 2004 Guam 13, ¶¶ 8-9, 34. Hence, under the MMMAA, if a claimant fails to first arbitrate his or her medical malpractice claims, the Court does not have subject matter jurisdiction to resolve such claims. *Id.*

On May 8, 2019, the same day the Plaintiffs filed and served the instant Complaint, the Plaintiffs also served a Petition and Demand for Arbitration on the Defendants in compliance with the MMMAA. The Plaintiffs however, maintain that arbitration of their medical malpractice claims should be deferred pending resolution of the statutory challenges presented in their Complaint. In addition to their tort claims, the Plaintiffs' fourth and fifth causes of action seek a declaratory judgment, as well as preliminary and permanent injunctive relief while challenging the constitutionality and "organicity" of the MMMAA. *See* Compl., ¶¶ 10-12. In their Complaint, Plaintiffs allege that the MMMAA is inorganic and unconstitutional because it deprives them of their fundamental rights guaranteed under the Due Process, Equal Protection, and Privileges and Immunities clauses of the Organic Act of Guam and the United States Constitution by compelling them to first submit their claims to costly and burdensome arbitration. *Id.* Specifically, the Plaintiffs maintain that by mandating arbitration first, the MMMAA imposes excessively high costs on medical malpractice victims thereby causing a legal impediment that obstructs meaningful access to the courts and justice. Thus, by fragmenting their Complaint in distinct parts, the Plaintiffs assert that the Court has subject matter jurisdiction to first decide the statutory challenges to the MMMAA presented in their fourth and fifth causes of action. *See* Compl., ¶¶ 10-12.

In response, the Defendants argue that the Plaintiffs lack standing to assert any constitutional challenge to the MMMAA because their purported injuries are, at this time, hypothetical, abstract, and generalized. Further, the Defendants maintain that because the Plaintiffs have not yet attempted to arbitrate their claims, their challenge to the MMMAA is unripe. Thus, the Defendants assert that the Plaintiffs' non-compliance with the mandates of the

MMMAA is misguided, and the Plaintiffs should be compelled to arbitrate their claims pursuant to Title 10 GCA § 10102.

Here, the first issue before the Court is whether the Plaintiffs have standing to challenge the constitutionality of the MMMAA. If the Court determines that the Plaintiffs have standing to pursue a constitutional challenge to the MMMAA, the Court will proceed with the applicable constitutional analysis.

I.      **The Plaintiffs' standing to challenge the constitutionality of the MMMAA.**

"Standing is a threshold jurisdictional matter." *Guam Image Consultants v. Guam Mem'l Hosp. Auth., et al.*, 2004 Guam 15 ¶ 17 (citing *Brewer v. Lewis*, 989 F.2d 1021, 1025 (9th Cir. 1993)). Standing is a requirement of subject-matter jurisdiction that must be determined as of the date of filing of the complaint. *Taitano v. Lujan*, 2005 Guam 26 ¶ 15. The Court has no subject-matter jurisdiction over a case when a party lacks standing, and must dismiss the case. *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2014 Guam 12 ¶ 14. A plaintiff cannot rely on events unfolding after the filing of the complaint to establish standing. *Hemlani v. Melwani*, 2016 Guam 33 ¶ 17 (citing *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005)).

To establish standing, a party must show that it has suffered an "injury in fact," which is causally related to the conduct at issue, and redressable by a favorable decision from the court. *See Guam Mem'l Hosp. Auth. v. Super. Ct.*, 2012 Guam 17 ¶ 10; *see also Benavente v. Taitano*, 2006 Guam 15, ¶ 14 (quoting the three-part test supplied by the United States Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In other words, the Plaintiffs must show an actual or imminent injury that is traceable to the Defendants and redressable by the Court.

For the purposes of standing, the Plaintiffs must demonstrate that they suffered an "injury in fact" meaning, an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, and that is neither conjectural nor hypothetical. *Lujan*, 504 U.S. at 560. Here, the Plaintiffs allege that the wrongful death of their five-year old son was caused by the negligence of the Defendants. Under the MMMAA, the Plaintiffs are

statutorily mandated to engage in private arbitration which they allege they cannot afford. Consequently, because the Plaintiffs cannot proceed to obtain direct judicial relief without having first engaged in costly arbitration, the Plaintiffs argue that the MMMAA deprives them of their right to pursue a claim against the Defendants for the wrongful death of their son. In their Complaint, the Plaintiffs assert that they will suffer substantial and irreparable harm if they are required to pursue mandatory arbitration first. Specifically, the Plaintiffs maintain that the excessive financial burden imposed by the mandatory arbitration greatly disadvantages individuals, such as the Plaintiffs, who are without substantial financial means. *See* Compl., ¶¶ 45-46.

The Defendants, on the other hand, note that the Plaintiffs are currently pursuing a wrongful death claim against the Guam Memorial Hospital Authority ("GMHA"), which is not affected by the MMMAA, in Civil Case No. CV1024-19. *See* 10 GCA § 10144 (claims against government providers are exempt from the MMMAA). Because the Plaintiffs are currently pursuing a similar wrongful death case in CV1024-19, the Defendants argue that the Plaintiffs have not been barred from seeking judicial relief and therefore, have not suffered an injury. Thus, the Defendants assert that the Plaintiffs lack standing to claim that the MMMAA has precluded them from bringing such action. The Court disagrees. The Court finds that the Plaintiffs' claims against GMHA and the claims against the Defendants in the instant case are separate and distinct. The fact that the Plaintiffs initiated a separate cause of action against GMHA does not negate the Plaintiffs' causes of action against the Defendants for their negligence in the present case.[1]

Nonetheless, the Court finds that the Plaintiffs have a legally protected interest to seek redress from the court, and that the deprivation of this right constitutes an intangible harm sufficiently concrete to satisfy the Court. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016) (intangible harms such as the effects of defamation or the deprivation of rights could be

---

[1] Plaintiffs allege claims for wrongful death against GMHA, *et al.* under the Government Claims Act. *See Lubofsky v. Guam Memorial Hospital Auth., et al.*, Superior Court of Guam Civil Case No. CV1024-19 ("Amended Complaint").

concrete enough to be an injury in fact). Further, the Court finds that the Plaintiffs' injury is particularized as the Plaintiffs assert they do not have the financial means to engage in the mandatory arbitration before the matter can brought to court. *See Lujan*, 504 U.S. at 575 (the claimant must show that it has "sustained or is immediately in danger of sustaining a direct injury as the result of that action is not sufficient that he has merely a general interest common to all members of the public.") (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)). Finally, the Court finds that the harm to the Plaintiffs is actual or imminent, and not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. As aforementioned, the Plaintiffs cannot proceed to obtain judicial relief until they engage in the costly arbitration prerequisite mandated by the MMMAA. The Plaintiffs have rights guaranteed by the Organic Act of Guam and the United States Constitution, the violation of which grants them the right to seek redress from the court. Accordingly, for the reasons explained above, the Court finds that the Plaintiffs have sufficiently established their standing to challenge the constitutionality of the MMMAA. Thus, the Court has subject matter jurisdiction to decide the statutory challenges presented in the Plaintiffs' fourth and fifth causes of action. *See* Compl., ¶¶ 10-12.

## II.     The Plaintiffs' constitutional challenges to the MMMAA are ripe for review.

Inextricably linked with the concept of constitutional standing is the doctrine of ripeness. *See Renne v. Geary*, 501 U.S. 312, 320 (1991) ("Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention."); *see also Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010) ("Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication . . . ripeness is a means by which [courts] may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur."). Inquiry into "ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Matter of Guardianship of Moylan*, 2018 Guam 15 ¶ 7 (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)); *see also Immigrant Assistance Project of Los Angeles Cty. Fed'n of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 861

(9th Cir. 2002) ("The ripeness question is whether the harm asserted has matured sufficiently to warrant judicial intervention."). A question or claim is fit for judicial review when "the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *People v. Gay*, 2007 Guam 11 ¶ 8 (citing *Verizon California Inc. v. Peevey*, 413 F.3d 1069, 1075 (9th Cir. 2005). Conversely, "[a]n issue is not 'fit' for judicial review when it involves 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (citing *United States v. Dibiase*, 687 F.Supp. 38, 42 (D.Conn. 1998)); *Texas v. United States*, 523 U.S. 296, 300 (1998).

Here, the Plaintiffs' challenge to the constitutionality and "organicity" of the MMMAA presents a purely legal issue and therefore, is ripe for review. *See Territorial Prosecutor for Territory of Guam v. Superior Court of Guam*, No. CIV. 82-0215, 1983 WL 30224, at*2 (D. Guam App. Div. May 26, 1983) ("A constitutional challenge to a statute presents a ripe issue if the issue is a purely legal one which further factual development will not render more concrete.") (*citing Pac. Legal Found. v. State Energy Res. Conservation & Dev. Comm'n*, 659 F.2d 903, 915 (9th Cir. 1981)). The Court rejects the Defendants' arguments that the Plaintiffs' constitutional challenges are unripe due to their alleged failure to establish an inability to afford the arbitration costs, failure to minimize potential harm, or failure to initiate or attempt arbitration under the MMMAA. In other words, the Defendants contend that because the Plaintiffs have not even attempted to arbitrated their claims, the Plaintiffs cannot demonstrate an injury or live controversy resulting from the MMMAA's mandatory arbitration procedures.

The Defendants cite to *Kennedy v. GentleCare Dental Associates, P.C. and Hugh Sule*, Superior Court of Guam Civil Case No. CV0499-02, Decision and Order re Defendants' Motion to Compel Arbitration (Sept. 1, 1996), in both their Motion to Stay and their Opposition to Plaintiffs' Motion for Declaratory Judgment, to support their argument that the Plaintiffs' statutory challenges to the MMMAA are premature. In *Kennedy*, the plaintiff filed a complaint in court for dental malpractice before first submitting the claims to arbitration. When the defendant moved to compel arbitration under the MMMAA, the plaintiff argued that the MMMAA was unconstitutional, on a number of grounds, due to the alleged excessive cost of

arbitration. The *Kennedy* court rejected the plaintiff's constitutional challenges holding, *inter alia*, that the plaintiff's claim that the cost of arbitration was excessive was unripe. Specifically, by not completing arbitration, the court held that the plaintiff had yet to incur the harm of any fees or costs and thus, could not claim a denial of access to the courts, or any other right, as a result of those fees. *See Kennedy, supra*, pp. 9-10.

The Court disagrees with the holding reached by the *Kennedy* court. As aforementioned, "a constitutional challenge to a statute presents a ripe issue if the issue is a purely legal one which further factual development will not render more concrete." *Territorial Prosecutor for Territory of Guam, supra*; *see, e.g., Shelter Framing Corp. v. Pension Benefit Guaranty Corp.*, 705 F. 2d 1502, 1509 (9th Cir. 1983) rev'd on other grounds by *Carpenters Pension Trust for Southern California v. Shelter Framing Corp.*, 467 U.S. 1257 (1984) ("the arbitration requirement does not apply where the constitutionality of the statute . . . is at issue."); *Central States, Southeast and Southwest Areas Pension Fund v. Johnco, Inc.*, 694 F. Supp. 478, 481-82 (N.D. Ill. 1988) ("Thus, necessarily, challenges to the constitutionality of the MPPAA's arbitration procedures will involve situations where the challenger has not undergone arbitration.") (citations omitted)).

Pursuant to the standards set forth above, the Court determines the Plaintiffs' constitutional challenges to the MMMAA are ripe for review. First, an actual attempt by the Plaintiffs to arbitrate would not further establish or develop the purely legal issue of whether the MMMAA is unconstitutional or inorganic. Second, requiring the Plaintiffs to complete arbitration before seeking judicial review would only inflict the harm and undue hardship the Plaintiffs' statutory challenge seeks to avoid. Because of the mandatory arbitration prerequisite, the MMMAA, assuming *arguendo*, bars the Plaintiffs' right to seek redress from the courts. If the Plaintiffs cannot afford to initiate, let alone complete, arbitration, the Plaintiffs' constitutional challenges to the MMMAA would not come before this Court. Thus, the Court finds that the issues appear sufficiently concrete and mature to warrant the exercise of jurisdiction. *See Territorial Prosecutor for Territory of Guam, supra*. The Plaintiffs' constitutional challenge to the MMMAA is therefore, ripe for adjudication.

Accordingly, having found that the Plaintiffs have standing to challenge the constitutionality of the MMMAA, and having determined the issues ripe for review, the Court hereby **DENIES** the Defendants' Motion for Stay Pending Arbitration insofar as it relates to the Plaintiffs' constitutional challenges to the MMMAA. The Court now turns its analysis to the Plaintiffs' Motion for Declaratory Judgment and Permanent Injunction.

### III.    Constitutionality of the MMMAA.

In their Complaint, the Plaintiffs allege that the MMMAA is inorganic and unconstitutional because it deprives them of their fundamental rights guaranteed under the Due Process, Equal Protection, and Privileges and Immunities clauses of the United States Constitution and the Organic Act of Guam, by compelling them to first submit their claims to costly and burdensome arbitration. Specifically, the Plaintiffs maintain that by mandating arbitration first, the MMMAA imposes excessively high costs on medical malpractice victims, causing a legal impediment that obstructs meaningful access to the courts and justice. Further, the Plaintiffs assert that because the MMMAA violates their fundamental right of access to the courts, strict judicial scrutiny applies. Thus, under a strict judicial scrutiny analysis, the Plaintiffs posit that the MMMAA is unconstitutional.

The Defendants, on the other hand, maintain that the MMMAA does not affect a fundamental right. Specifically, the Defendants assert that the Plaintiffs' right to pursue a claim for medical malpractice is not a fundamental interest. Therefore, the Defendants contend that the Plaintiffs' constitutional challenge to the MMMAA is instead subject to the rational basis test. Under the rational basis test, the Defendants argue that the MMMAA is rationally related to a legitimate government purpose and therefore, is valid.

As a preliminary matter, the Supreme Court of Guam has held that the constitutionality of a statute must begin with the "general rule that legislative enactments are presumed to be constitutional." *Underwood v. Guam Election Comm'n*, 2006 Guam 17 ¶ 51 (citing *In re Request of Governor Gutierrez*, 2002 Guam 1 ¶ 41). "The Party challenging constitutionality of a local law bears the burden of establishing its unconstitutionality." *Id.* at ¶ 52. In *Gutierrez*,

the Supreme Court of Guam provided the following guidance regarding the trial courts' duties and responsibilities when reviewing the constitutionality of a Legislative act:

> [T]he validity of acts is to be upheld if at all possible with all doubt resolved in favor of legality and unconstitutionality will be decreed only when no other reasonable alternative presents itself. . . . However, it is the court's duty to interpret the laws. Therefore, the court must declare a legislative enactment unconstitutional if an analysis of the constitutional claim compels such a result. "[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." *I.N.S. v. Chadha*, 462 U.S. 919, 944 (1983).

*In re Request of Gutierrez*, 2002 Guam 1 at ¶ 41 (citations omitted). Thus, with the foregoing principles in mind, the Court will begin its analysis with determining the appropriate level of scrutiny to apply – whether, the Plaintiffs' constitutional challenges are subject to strict scrutiny or rational basis review. Thereafter, the Court will analyze the Plaintiffs' constitutional challenges to the MMMAA under the applicable standard of review.

a. Applicable Standard of Review

Strict judicial scrutiny of a statute applies to those cases involving laws that operate to the disadvantage of suspect classes or that impinge on fundamental rights and liberties explicitly or implicitly protected by the Constitution. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973); *see also Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) ("[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class."). When no suspect class is involved and no fundamental right is burdened, courts apply a rational basis test to determine the constitutionality of a legislative classification. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277-78 (9th Cir. 2004) (*citing Olagues v. Russoniello*, 770 F.2d 791, 802 (9th Cir. 1985). "The conclusion of whether a governmental act is subject to strict scrutiny or rational basis examination is important, as it often determines the outcome of the inquiry." *Id.* at 1278 (*citing United States v. Dumas*, 64 F.3d 1427, 1432 (9th Cir. 1995)).

Here, the Plaintiffs argue that the MMMAA's mandatory imposition of costly, forced, and burdensome arbitration infringes on their fundamental right of access to the courts

guaranteed by the Due Process, Equal Protection, and Privileges and Immunities clauses of the Organic Act of Guam and the United States Constitution. Thus, the Plaintiffs argue that because the MMMAA infringes on their fundamental right of access to the courts, it is subject to strict judicial scrutiny. The Defendants however, contend that the MMMAA does not affect a fundamental right and therefore, rational basis review applies.

A fundamental right is a personal right or liberty explicitly or implicitly protected by the Constitution. *See San Antonio Indep. Sch. Dist.*, 411 U.S. at 4. "[T]he right of access to the courts is a fundamental right protected by the Constitution." *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1061 (9th Cir.2014) (quoting *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir.1998)); *see also Bounds v. Smith*, 430 U.S. 817, 828 (1977), overruled in part by *Lewis v. Casey*, 518 U.S. 343 (1996) (acknowledging the fundamental right of access to the courts as recognized in *Bounds*). The right of access to the courts is explicitly protected under the First Amendment of the Constitution. U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."). Guam's Organic Act Bill of Rights, 48 U.S.C. § 1421b, also contains an identical provision regarding the right to petition as the First Amendment. *See* 48 U.S.C. § 1421b(a) ("No law shall be enacted in Guam . . . abridging . . . the right of the people . . . to petition the government for a redress of their grievances."). The First Amendment "right of the people . . . to petition the Government for a redress of grievances," which secures the right to access the courts, has been recognized as "one of the most precious of the liberties safeguarded by the Bill of Rights." *Ringgold-Lockhart*, 761 F.3d at 1061; *see also Guam Greyhound, Inc. v. Brizill*, 2008 Guam ¶ 15 (citing *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002)). In addition to explicit protection under the First Amendment, the U.S. Supreme Court has also recognized the right of access to the courts in the Privileges and Immunities clause, the Fifth Amendment due process clause, and the Fourteenth Amendment equal protection clause. *See Christophyer v. Harbury*, 536 U.S. 403, 415 n. 12 (2002); *see also Tennessee v. Lane*, 541 U.S. 509, 523 (1978) (citing *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) and *M.L.B. v. S.L. J.*, 519 U.S. 102, 117 (1996) (The Due Process Clause also requires the States to afford certain

civil litigants a "meaningful opportunity to be heard" by removing obstacles to their full participation in judicial proceedings.).

The essence of the Plaintiffs' constitutional challenge to the MMMAA involves the right of access to the courts. Specifically, the Plaintiffs claim that the MMMAA's mandatory arbitration prerequisite foists an arduous expense upon medical malpractice victims, without reasonable and affordable options for alternative relief, thereby barring claimants that cannot afford arbitration from seeking redress from the courts. Accordingly, since the Plaintiffs' constitutional challenge to the MMMAA involves the alleged interference with their fundamental right of access to the courts, the Court will apply the strict scrutiny standard of review. *See San Antonio Indep. Sch. Dist.*, 411 U.S. at 17. To withstand strict scrutiny, a statute must be precisely tailored to serve a compelling state interest. *Plyler v. DOE*, 457 U.S. 202, 217 (1982).

The Defendants cite numerous cases in their Opposition in which the United States Supreme Court rejected claims asserting that court filing fees were unconstitutional when the claimants could not afford to pay such fees. *See, e.g., M.L.B. v. S.L.J.*, 519 U.S. 102, 117 (1996); *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971); *United States v. Kras*, 409 U.S. 434, 444-45 (1973); *Ortwein v. Schwab*, 410 U.S. 656, 659 (1973). In those cases, however, the U.S. Supreme Court, applying the rational basis test, rejected constitutional arguments challenging the validity of a statute that did not affect a fundamental interest. *See also Taylor v. Delatoore*, 281 F.3d 844 (9th Cir. 2002); *Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir. 1999). In this case, the Plaintiffs assert that the costly and burdensome arbitration mandated by the MMMAA infringes on their right to free access to the courts. Because access to the courts is a fundamental right, strict judicial scrutiny applies.

The Defendants also cite to cases wherein Federal Appellate Courts have applied the rational basis review to constitutional challenges of state laws regulating certain medical malpractice and tort claims. *See, e.g., Smith v. Botsford Gen'l Hospital*, 419 F.3d 513, 519-520 (6th Cir. 2005); *Patton v. TIC United Corp.*, 77 F.3d 1235, 1247 (10th Cir. 1996); *Hoffman v. United States*, 767 F.2d 1431, 1435-36 (9th Cir. 1987); *Fitz v. Dolyak*, 712 F.3d 330, 332 (8th

Cir. 1983). In those cases, the courts held that the right to recover tort damages was not a fundamental right. This matter however, is distinguishable from the aforementioned cases cited by the Defendants. In those cases, the claimants challenged the constitutionality of certain damages provisions regarding its applicability and restrictions. *See, e.g., Watson v. Hortman*, 844 F.Supp.2d 795, 800-801 (E.D. Tex. 2012) ("[T]he underlying right affected by the legislation is the right to recover on a health care liability claim."). Here, the Plaintiffs are not asserting that the MMMAA explicitly excludes them from recovering damages, or that the MMMAA impermissibly limits the amount of damages they could ultimately receive. Instead, the Plaintiffs argue that the MMMAA's mandatory arbitration provision imposes excessively high costs on medical malpractice victims, causing a legal impediment that obstructs meaningful access to the courts and justice. In other words, the Plaintiffs assert that the MMMAA's mandatory arbitration provision infringes on their fundamental right of access to the court. Again, because access to the courts is a fundamental right, strict judicial scrutiny applies.

Finally, the Court notes a related decision issued by the Honorable Steven S. Unpingco in *Laguana v. Villagomez-Palisson, et al.*, Civil Case No. CV0557-02, filed in the Superior Court of Guam on January 7, 2005. In that case, the Plaintiff similarly challenged the MMMAA on the grounds that the mandatory arbitration provision violated equal protection rights, the right to a jury trial, and the right of access to the courts. On remand, the court found that the constitutional challenges did not involve fundamental rights and therefore, applied the rational basis standard of review. Consequently, the *Laguana* court found that the MMMAA was constitutional and "organic" facially and as applied. Here, the Court is not convinced that the same standard should apply under these particular set of facts and arguments in this case. As determined above, the right of access to the courts is a fundamental right protected by the United States Constitution, as made applicable to Guam through the Organic Act. Because the Plaintiffs argue that the MMMAA infringes on their fundamental right of access to the courts, review is subject to strict judicial scrutiny - narrowly tailored to serve a compelling government interest.

b. The MMMAA does not violate Equal Protection, Due Process, or the Privileges and Immunities clauses of the Organic Act of Guam and the United States Constitution.

The Organic Act of Guam guarantees substantive fundamental rights, i.e., the right to petition the government for a redress of grievances; the right to equal protection of the laws; the right to due process; and the protections afforded under the Fourteenth Amendment of the United States Constitution to the extent that "[n]o state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." *See* 48 U.S.C. § 1421b(a) ("access to the courts"), §1421b(e) ("due process"), §1421b(n) ("equal protection"), and §1421b(u); *see also* U.S. Const. amend. XIV.

In their Complaint, the Plaintiffs allege that the MMMAA is inorganic and unconstitutional because it deprives them of their fundamental rights guaranteed under the Due Process, Equal Protection, and the Privileges and Immunities clauses of the Organic Act of Guam and the United States Constitution by compelling them to first submit their claims to costly and burdensome arbitration. As determined above, the crux of the Plaintiffs' constitutional challenge to the MMMAA is the infringement of their fundamental right of access to the courts. The Plaintiffs maintain that by mandating arbitration first, the MMMAA imposes excessively high costs on medical malpractice victims, causing a legal impediment that obstructs meaningful access to the courts and justice. However, the Defendants, erroneously applying the rational basis standard, contend that the MMMAA is rationally related to a legitimate governmental purpose that is, providing greater access to medical malpractice insurance for Guam providers and better healthcare for Guam residents.

Under strict judicial scrutiny, a law will be upheld if it is necessary to achieve a compelling government purpose. *See, e.g., Adarand Constructors v. Pena*, 515 U.S. 200 (1995); *Sugarman v. Dougall*, 413 U.S. 634 (1973); *Sherbert v. Verner*, 374 U.S. 398 (1963). In other words, the government's purpose must be vital and the law must be necessary to accomplishing that purpose. *See, e.g., Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280

(1986) ("Under strict scrutiny the means chosen to accomplish the State's asserted purpose must be specifically and narrowly tailored to accomplish that purpose."). Further, the law must be the least restrictive or least discriminatory alternative. If the law is not the least restrictive alternative, then it is not necessary to accomplish the government's purpose. *See, e.g., Simon & Schuster v. New York Crime Compensation Bd.*, 502 U.S. 105 (1991). Thus, a law will be upheld as valid or constitutional only if such classifications are narrowly tailored to further compelling government interests. *See Grutter v. Bollinger*, 509 U.S. 306, 326 (2003); *see also Plyler*, 457 U.S. at 217 (to withstand strict scrutiny a statute must be precisely tailored to serve a compelling state interest).

Since the MMMAA was enacted in 1991, only once has the issue regarding the validity of the statutory scheme reached the Supreme Court of Guam. In *Villagomez-Palisson v. Superior Court*, 2004 Guam 13, the Supreme Court of Guam upheld the validity of the statute, finding that the MMMAA did not violate the separation of powers doctrine. The Guam Supreme Court however, declined to address the issue regarding whether the provisions of the MMMAA violated rights to a jury trial, access to the courts, due process, or equal protection. *See Villagomez-Palisson*, supra at ¶ 32 ("[T]he trial court did not decide the organicity of the [MMMAA], facially or as applied, in relation to the various rights identified. . . . We decline to address these arguments in this proceeding in the first instance.").[2] Thus, the issue of whether the MMMAA is unconstitutional on other grounds other than separation of powers remains unresolved.

In *Villagomez-Palisson*, the Supreme Court of Guam also interpreted the MMMAA and found the legislative intent as follows:

> [Title 10, Chapter 10] was passed as a result of the perceived problem associated with the increase in the cost of malpractice insurance, and even its unavailability. The committee found that the island was faced with a dilemma due to the passing on of high medical fees and costs to the consumer, as well as the increase in costs of medical care due in part to the tendency of physicians to practice "defensive

---

[2] On remand, the trial court, applying the rational basis test, held that the MMMAA's mandatory arbitration provision was constitutional facially and as applied. *See Laguana v. Villagomez-Palisson, et al.*, Civil Case No. CV0557-02, *supra*. Neither party appealed the decision.

medicine" to avoid malpractice suits. The Guam Legislature apparently believed that the provisions of the [MMMAA] would remedy what it perceived as a crisis situation in the area of medical malpractice.

*Id.* at ¶ 29. After reviewing the language of the MMMAA, its predecessor P.L. 13-115, the holding in *Awa v. Guam Memorial Hosp. Authority*, 726 F.2d 594 (9th Cir. 1984) (striking down P.L. 13-115 as unconstitutional), and the Committee Report on Bill No. 325 (later enacted as P.L. 21-043 (MMMAA)), it is clear that the MMMAA was intended to address the rising costs of malpractice insurance in Guam, and to help provide for the prompt, efficient, and effective resolution of medical malpractice claims through arbitration as opposed to litigation. The Court finds that the need to keep medical insurance costs down, thereby maintaining the availability of affordable health care, is a compelling government interest. *See Villagomez-Palisson*, 2004 Guam at ¶ 31; *see also Awa v. Guam Memorial Hosp. Authority*, supra at 595. The Court now turns to whether the provision of the MMMAA are narrowly tailored to further the Legislature's purpose.

The MMMAA requires all medical malpractice claimants to first submit their claims to mandatory arbitration with the American Arbitration Association ("AAA"), or other entity organized to arbitrate disputes pursuant to the MMMAA. 10 GCA §§ 10102 and 10103. Once arbitration has concluded, the arbitrators must promptly render an award. 10 GCA § 10132. Thereafter, any party may move to confirm, vacate or modify the award in the Superior Court of Guam. 10 GCA §§ 10135-37. Further, any party may also appeal the award and request for a trial *de novo* in the Superior Court of Guam. 10 GCA § 10139. If a party chooses to appeal the arbitration award, he or she must improve the award by forty percent (40%) or more otherwise that party will be subject to harsh sanctions including costs, fees, attorney's fees, and costs of jurors. 10 GCA § 10143.

The Court acknowledges the obstacles and hurdles the MMMAA has created for medical malpractice claimants. First, the MMMAA imposes a prohibitively expensive private arbitration prerequisite on medical malpractice claimants thereby barring them from obtaining direct access to the courts for redress of their claims. Although the MMMAA, on its face, allows a claimant to appeal an award and request for a trial *de novo*, claimants can only access

the courts after they have completed and incurred the high cost of private arbitration. Second, other than the AAA, there is no other entity that has been organized under the MMMAA to provide an alternative forum of dispute resolution. Thus, pursuant to 10 GCA § 10101(a), the AAA must be the entity that arbitrates medical malpractice disputes in order for the arbitration to comply with the MMMAA mandates. Arbitration in a different forum (*e.g.*, Dispute Prevention and Resolution located in Hawaii ("DPR") and Pacific Arbitration and Mediation Services (PAMS)), will not, under the MMMAA, allow the courts to ultimately review the dispute. Finally, while some or all of the filing fees of the AAA can be deferred upon a showing of financial hardship, at least half of the administrative costs, as well as the arbitrators' fees, must be paid in advance. *See* 10 GCA § 10107 (administrative costs shall be equally shared by the parties subject to an award of costs by the panel); *see also* 10 GCA § 10108 (the act requires a panel of three arbitrators).

Here, the Plaintiffs maintain that they are unable to afford private arbitration mandated by the MMMAA. Under the MMMAA, the Plaintiffs must first submit their medical malpractice claims to a panel of three arbitrators from the AAA. The Plaintiffs claim $11 million in damages. According to the AAA's fee schedule, the Plaintiff must front approximately $11,000.00 in fees in order to initiate the arbitration process. *See* Commercial Arbitration Rules and Mediation Procedures, Administrative Fee Schedules, *available at* https://adr.org/sites/default/files/Commercial_Arbitration_Fee_Schedule_1.pdf. These fees are non-refundable and are not used to cover any other expenses of arbitration. *Id.* (Refunds will not be made once an arbitrator has been appointed, or if a case is not settled or withdrawn before an arbitrator is appointed). While the arbitration panel may, in its discretion, order the Defendants to pay some or all of the filing fees if the Plaintiffs prevail, the Plaintiffs must still pay the initial filing fee which they claim they cannot afford. Further, even if the Plaintiffs managed to initiate and complete arbitration, the MMMAA imposes a penalty upon a party if that party fails to improve the arbitration award by at least 40% upon a trial *de novo* on appeal. *See* 10 GCA §§ 10142-43. Typically, medical malpractice victims, such as the Plaintiffs, have high debts due to medical bills or low income as a result of their medical

injuries and thus, are unlikely to be able to afford the high initial costs of private arbitration mandated by MMMAA. Therefore, it is substantially certain that if a claimant cannot afford to complete arbitration under the MMMAA, they may never have the chance to resolve their disputes in court. In other words, the MMMAA's statutory scheme, as currently written, deprives medical malpractice claimants who cannot afford the high costs associated with private arbitration with a remedy or any reasonable options for relief to adjudicate their claims.

The Court recognizes the imminent and irreparable harm, albeit primarily economic, the Plaintiffs may sustain by being denied access to the courts in this instance. However, having thoroughly considered the arguments, and reviewed the pertinent legal authorities, the Court finds the evidence presented insufficient to overcome the standard imposed under a strict judicial scrutiny analysis. As aforementioned, the Legislature's purpose of keeping medical malpractice insurance premiums low for Guam providers, thereby resulting in affordable and accessible healthcare for the people of Guam, is a compelling government interest. However, the Court cannot conclude, based on the facts presented, that the MMMAA *was not* narrowly tailored to accomplish that purpose. Although the MMMAA places a burden of keeping malpractice insurance premiums low and maintaining affordable healthcare on one small and vulnerable sector of society, namely non-wealthy victims of medical malpractice, the Court cannot conclude, with the facts before it, that the MMMAA is not the least restrictive alternative necessary to accomplish the Legislature's purpose.

Thus, based on the foregoing, the Court finds the MMMAA constitutional and organic, both facially and as applied, and that it does not violate the fundamental right of access to the courts guaranteed under the Due Process, Equal Protection, and Privileges and Immunities clauses of the Organic Act of Guam and the United States Constitution. Accordingly, the Plaintiffs' Motion for Declaratory Judgment and Permanent Injunction is **DENIED**.

### CONCLUSION

For the reasons set forth above, the Court finds that the Plaintiffs have standing to challenge the constitutionality of the MMMAA, and having determined the issues ripe for review, **DENIES** the Defendants' Motion for Stay Pending Arbitration insofar as it relates to

the Plaintiffs' constitutional challenges to the MMMAA. Consequently, applying the strict scrutiny analysis above, the Court finds the MMMAA constitutional and organic both facially and as applied. Accordingly, the Plaintiffs' Motion for Declaratory Judgment and Permanent Injunction is **DENIED**.

Finally, because the Defendants have also moved alternatively for a stay pending arbitration, pursuant to 10 GCA § 10114, the Court hereby **STAYS** these proceedings until arbitration is conducted and completed in accordance with the MMMAA.

IT IS SO ORDERED _____JUL 3 0 2020_____.


**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**